

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 1 6 2018

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Aug 16, 2018

, Deputy

for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　Petitioner,<br><br>v.<br><br>KENNETH A. LINVILLE, JR.,<br><br>　　　　Respondent. | NO. 94813-5<br><br>EN BANC<br><br>Filed ____AUG 1 6 2018____ |

GORDON McCLOUD, J.—The State charged Kenneth Linville Jr. with leading a wave of burglaries throughout Thurston County. The State did so by charging Linville with one count of "leading organized crime," in violation of Washington's Criminal Profiteering Act (CPA), RCW 9A.82.060(1)(a), plus 137 other offenses. Some of those 137 other offenses were crimes listed in RCW 9A.82.010(4) as predicate offenses, which, when combined, form the requisite "pattern of criminal profiteering" on which the umbrella crime called "leading

organized crime" is based. But some of these 137 other offenses were not listed in RCW 9A.82.010(4) as predicate crimes at all.

The question in this case is whether the CPA's "joinder bar" rule, RCW 9A.82.085, permits both predicate crimes and nonpredicate crimes to be joined in a single "leading organized crime" information. That joinder bar statute says, "The [S]tate is barred from joining any offense other than the offense alleged to be part of the pattern of criminal profiteering activity" in a single prosecution like this one for leading organized crime. *Id.* Linville argues that this statute bars the State from joining charges outside of the predicated offenses listed in RCW 9A.82.010(4) in such a prosecution. Linville continues that because defense counsel did not move for severance of the unlisted offenses based on RCW 9A.82.085, he received ineffective assistance of counsel. The State argues that RCW 9A.82.085 does not limit joinder to predicate offenses, as long as the unlisted offenses form part of the "pattern."

The CPA's language supports Linville's interpretation, not the State's. The comparable federal RICO[1] statute's language supports Linville's interpretation, not the State's. And United States Supreme Court decisions interpreting the comparable federal RICO statute's language support Linville's interpretation, not the State's. We

---

[1] The Racketeer Influenced and Corrupt Organizations Act (RICO), Pub. L. No. 91-452, tit. IX, 84 Stat. 922, 941-48 (1970) (codified as 18 U.S.C. §§ 1961-1968).

therefore agree with the Court of Appeals' analysis that unlisted crimes cannot be joined as part of a "pattern of criminal profiteering activity."

Nevertheless, on this record, which is devoid of defense counsel's reasons (or lack of reasons) for choosing to defend against these crimes in one prosecution rather than several, Linville fails to show ineffective assistance of counsel. We therefore reverse and remand to the Court of Appeals for further proceedings in that court.

FACTS

The State charged Linville with leading organized crime, RCW 9A.82.060, plus 137 other crimes.[2] Linville's defense counsel moved to sever the charges into a series of trials under Criminal Rule (CrR) 4.4's discretionary severance standard. 1 Verbatim Report of Proceedings (May 18, 2015) at 26-34. The trial court denied this motion because defense counsel failed to show specific prejudice and hence severance was not necessary. *Id.* at 49-50. In doing so, the trial court recognized that

---

[2] The State charged 35 counts of residential burglary, 1 count of attempted residential burglary, 4 counts of first degree burglary, 3 counts of second degree burglary, 39 counts of trafficking in stolen property, 17 counts of first degree theft, 18 counts of second degree theft, 1 count of attempted second degree theft, 3 counts of third degree theft, 5 counts of theft of a firearm, 5 counts of identity theft, 4 counts of unlawful possession of a firearm, 1 count of possession of stolen property, and 1 count of possession of a controlled substance. Several of the crimes are predicate offenses for criminal profiteering, specifically, theft in the first degree, theft in the second degree, trafficking in stolen property in the first degree, and identity theft in the second degree. *See* RCW 9A.82.010(4)(e), (r), (kk).

"the first count of leading organized crime" explained why there were "so many crimes that are charged in this particular case." *Id.* at 50.

The jury convicted Linville on all counts except one: possession of a controlled substance. Linville appealed these convictions on a number of grounds, including ineffective assistance of counsel. Linville argued that his counsel's performance was deficient because he failed to object to the joinder of charges not enumerated in RCW 9A.82.010(4), despite the mandatory "joinder bar" of RCW 9A.82.085.

The Court of Appeals agreed with Linville and reversed. *State v. Linville*, 199 Wn. App. 461, 400 P.3d 333 (2017). It held that defense counsel's performance was ineffective because he failed to object to the joinder of charges that are not included in RCW 9A.82.010(4)'s list as acts of "criminal profiteering." *Id.* at 465-71. We granted review, *State v. Linville*, 189 Wn.2d 1016, 404 P.3d 486 (2017), and reverse the Court of Appeals.

## STANDARD OF REVIEW

To prevail on a claim of ineffective assistance, Linville must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Because claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de

4

novo." *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). If there were factual findings concerning, for example, defense counsel's strategy or tactics, we would review them for "substantial evidence." *Id.* But "the legal conclusions flowing from such findings and testimony are reviewed de novo." *Id.* at 873-74.

## ANALYSIS

In order to evaluate Linville's ineffective assistance of counsel claim, we must first determine whether the CPA's "joinder bar" allows unlisted crimes to be joined with listed CPA predicate crimes in a single "leading organized crime" prosecution.

I.    The CPA's language bars joinder of unlisted crimes as predicates on which the pattern of profiteering is based

The State charged Linville with "leading organized crime," in violation of RCW 9A.82.060(1)(a), plus 137 other offenses. "Leading organized crime" is defined in our CPA as "[i]ntentionally organizing . . . any three or more persons with the intent to engage in a *pattern of criminal profiteering activity* . . . ." RCW 9A.82.060(1)(a) (emphasis added). "Criminal profiteering" is then defined in RCW 9A.82.010(4); that statute contains an exclusive list of crimes that fit within the definition of "criminal profiteering."[3] A "*pattern* of criminal profiteering activity,"

---

[3] The definition of "criminal profiteering" is divided into five clauses: (1) any act, (2) including any anticipatory or completed offense, (3) committed for financial gain (4) that is chargeable or indictable under the laws of the state in which the act occurred and (5)

in turn, is defined as "at least three acts *of criminal profiteering*" that are related in certain specific ways. RCW 9A.82.010(12) (emphasis added).

The State can join all predicate acts of "criminal profiteering" that form part of the "pattern" in a single case. But it cannot join any other crimes in that same case: under RCW 9A.82.085, the "joinder bar," "the [S]tate is barred from joining any offense other than the offenses alleged to be part of the pattern of criminal profiteering activity."

That brings us to the critical question in this case: Does "at least three acts *of criminal profiteering*" mean the State can charge more than three acts of *criminal profiteering* as part of the "pattern"? Or does it mean that the State can also charge other, unlisted, non-criminal-profiteering acts as part of the "pattern"? In other words, is the statutory list of predicate crimes just illustrative, allowing the State to

---

if the act occurred in a state other than this state would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable as a felony and by imprisonment for more than one year, regardless of whether the act is charged or indicted as any of the following enumerated crimes. RCW 9A.82.010(4). The definition then lists 46 enumerated offenses. RCW 9A.82.010(4)(a)-(tt).

The State argues that the conditional clause here labeled (5) governs not just the out-of-state crimes there described but also in-state crimes. That allows the State to argue that to comply with the "joinder bar," all it had to do was show that Linville's crimes occurred in Washington and were committed for financial gain. We disagree. Clause (5)'s conditional phrasing applies only to out-of-state crimes. Otherwise, there would be no reason to provide a list of in-state crimes that constitute predicate offenses.

tag any other illegalities as predicate "profiteering" crimes, despite the fact that the legislature excluded them from the list?

Linville argues that the list of predicate profiteering crimes is exclusive, that the "pattern of criminal profiteering activity" must be based on three or more of those crimes, and that the legislature excluded other crimes from that list on purpose. Linville therefore concludes that RCW 9A.82.085 bars the State from joining offenses not listed in RCW 9A.82.010(4) in the "pattern of criminal profiteering activity." The State argues that even crimes omitted from the CPA's list of profiteering activity can be charged as part of the "*pattern* of criminal profiteering activity." The State therefore concludes that all sorts of unenumerated offenses can form part of the "pattern of criminal profiteering activity" and be joined with the statutory-predicate-based profiteering activity despite the joinder bar.

This case thus presents a question of statutory interpretation.

The first controlling rule of statutory interpretation in a situation like this is "expressio unius est exclusio alterius"—the express inclusion of specific items in a class impliedly excludes other such items that are not mentioned. *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). Here, "criminal profiteering" is defined in RCW 9A.82.010(4), a statute that contains an exclusive list of 46 crimes. Under the interpretive rule of "expressio unius," all other crimes were impliedly

excluded. Because of that legislative decision, those other crimes cannot be considered profiteering crimes.

A *"pattern* of criminal profiteering activity" is then defined by reference to that exclusive list of 46 crimes as "at least three acts of *criminal profiteering"* that are related in very specific ways. RCW 9A.82.010(12) (emphasis added). The limitation to those 46 crimes remains because "at least three" describes "acts of criminal profiteering." In other words, since a "pattern of criminal profiteering activity" is limited to 46 specific predicate "acts of criminal profiteering," it necessarily follows that the "pattern" is limited to the same 46 specified predicate acts of criminal profiteering.

Even if the phrase "three or more acts of criminal profiteering" were ambiguous and *could* be interpreted to include nonprofiteering crimes, that ambiguity cannot be resolved by interpreting the statute to include all crimes under the sun—not just the listed 46—in the "pattern." The reason lies in the next controlling rule of statutory interpretation applicable here: any such ambiguity would have to be resolved under the rule of lenity. *In re Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999). And the rule of lenity compels the interpretation that is less punitive, not more punitive.

II.   The federal RICO statute, on which Washington's CPA was based, compels the same conclusion

There are other sources of law that compel the same conclusion. We have previously stated that it is helpful to look to the federal racketeering RICO statute on which our state's "'little RICO'" CPA was based when construing the CPA. *Winchester v. Stein*, 135 Wn.2d 835, 848, 959 P.2d 1077 (1998) (quoting *Rice v. Janovich*, 109 Wn.2d 48, 55, 742 P.2d 1230 (1987)).

The CPA's "pattern of criminal profiteering activity" parallels the federal RICO statute's "pattern of racketeering activity."[4] *Compare* RCW 9A.82.010(12), *with* 18 U.S.C. § 1961(5). RICO defines "pattern of racketeering activity" as "requir[ing] at least two *acts of racketeering activity*, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added).

Under RICO, these "at least two acts of racketeering activity" have to be on the statutory list of predicate racketeering acts to be included in the "pattern." Specifically, they have to be one of the crimes listed in § 1961(1)'s exclusive list of

---

[4] The 1985 Washington State Bar Association (WSBA) RICO Task Force recommended that the legislature replace the term "racketeering" with the "less pejorative" term "criminal profiteering." Memorandum from the WSBA RICO Task Force to the Bd. of Governors and WSBA 1 (Jan. 7, 1985) (on file with the Wash. State Archives).

predicate acts. In other words, RICO's modifying phrase "at least two" describes the number of predicate acts "of racketeering activity" required, not the number of predicate acts of racketeering activity plus other crimes that Congress neglected to mention. *See generally United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) (referring to the statutory definition of "racketeering activity" for the "series of criminal acts" on which the pattern must be based); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (RICO "pattern" must be based on RICO "predicates").

The United States Supreme Court has interpreted a "pattern of racketeering activity" to mean only offenses enumerated in 18 U.S.C. § 1961(1). *See Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 14, 126 S. Ct. 1264, 164 L. Ed. 2d 10 (2006) (defining a "pattern of racketeering activity" as a "pattern that RICO defines in terms of certain predicate acts"); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256-57, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994) (defining "pattern of racketeering activity" through § 1961(1)'s list of predicate offenses); *H.J. Inc.*, 492 U.S. at 239 (stating that "'[t]he term "pattern" itself requires the showing of a relationship' *between the predicates*" (emphasis added) (alteration in original) (quoting 116 CONG. REC., at 18,940 (1970) (Statement of Sen. McClellan))).

This does not matter that much under RICO. As long as the government can charge two listed predicate acts that are sufficiently related to be considered a

10

"pattern," the government can join other non-RICO crimes in the same indictment—there is no federal RICO "joinder bar."

But it matters a great deal in Washington because our legislature, cognizant of the prosecutorial power the CPA carried, did adopt a CPA "joinder bar." And relying on the United States Supreme Court's interpretation of the similar RICO statutes described above, the conclusion is inescapable that predicate CPA criminal profiteering acts, like predicate RICO racketeering acts, are limited to the predicate crimes that the legislature expressly listed. That is why we said in *Trujillo v. Northwest Trustee Services, Inc.* that "'[c]riminal profiteering' is defined as commission of specific enumerated felonies for financial gain." 183 Wn.2d 820, 837, 355 P.3d 1100 (2015) (citing RCW 9A.82.010(4)).

Thus, unless an offense is an "act of criminal profiteering" that fits within the definition of a "pattern of criminal profiteering," it cannot be joined with a violation of the CPA. That means that in this case, the State should not have joined the CPA charge of leading organized crime with unenumerated, nonpredicate, non-CPA offenses.[5]

---

[5] The concurrence says that this opinion shows a complete lack of understanding of organized crime prosecutions. Concurrence in result at 3. The concurrence overlooks the fact that this opinion is engaged only in the act of statutory interpretation, not in the act of developing tools for effective organized crime prosecutions. It is the legislature that enacted the statute, saying that a pattern of criminal profiteering activity involves "at least three acts of criminal profiteering" connected in specific ways. "Three" clearly refers to "acts of criminal profiteering," and "acts of criminal profiteering" is clearly defined by an

11

III.    We cannot tell from this record why counsel did not object; for that reason we cannot decide whether trial counsel's performance was deficient

But trial counsel did not object. To prove ineffective assistance of counsel, Linville must show that defense counsel's representation was deficient and that defense counsel's deficient performance caused prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-pronged test in *Strickland*, 466 U.S. at 687).

---

exclusive list. If there is a criticism to be made about misunderstanding prosecutorial tools, it should be directed at the legislature. But it is unlikely that the legislature's joinder bar misunderstands those tools. The legislative history shows that the joinder bar was purposely enacted to curb the type of vast prosecutorial power that RICO vested in federal prosecutors. Memorandum, *supra*, at 22 ("The Task Force is concerned by the history of the use of RICO prosecutions and their demonstrated tainting effect with juries and recommends that RICO prosecutions be focused on that narrow class of professional criminals for whom they were designed and do not provide the opportunity for joining RICO violations with other unrelated criminal prosecutions in light of the substantial evidentiary and tactical advantages that RICO prosecutions offer the government."); *see also* Barry Tarlow, *RICO: The New Darling of the Prosecutor's Nursery*, 49 FORDHAM L. REV. 165, 169-71 (1980).

The concurrence also raises the specter that double jeopardy protections might bar prosecutors from bringing related, nonpredicate offenses in a separate action. The concurrence fails to cite any authority for its concern. Indeed, the United States Supreme Court has explained that the double jeopardy clause "does not establish that the Government 'must . . . bring its prosecutions . . . together.' It is entirely free to bring them separately, and can win convictions in both" so long as they do not constitute the "same offense" under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *United States v. Dixon*, 509 U.S. 688, 705-06, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) (alterations in original).

Linville argues that his counsel was deficient for failing to object to joinder of criminal profiteering crimes with non-CPA, non-criminal-profiteering crimes, based on RCW 9A.82.085. Suppl. Br. of Resp't at 6. The record clearly supports Linville's argument that trial counsel did not object to joinder.

But it does not support his argument that this silence necessarily constituted deficient performance. In fact, at oral argument, the State theorized that joinder may have benefited the defendant more than having multiple separate trials and risking multiple separate convictions and sentencings.[6] From this record, it is impossible to tell whether that hypothesis—or any others—is correct.

But that is the record we are limited to on this appeal. No other evidence on counsel's strategic or tactical decisions was presented in the courts below. And when "the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (citing *State v. Crane*, 116 Wn.2d 315, 335, 804 P.2d 10 (1991); *State v. Blight*, 89 Wn.2d 38, 45-46, 569 P.2d 1129 (1977)).

As this court has previously noted, "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate

---

[6] *See* Wash. Supreme Court oral argument, *State v. Linville*, No. 94813-5 (Mar. 15, 2018), at 2 min., 57 sec. to 3 min., 17 sec.; 6 min., 40 sec. to 8 min., 6 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (State argues that separating the offenses may have resulted in two 10-week trials, each with over 100 witnesses, and that there might be a tactical advantage to joinder).

13

means of doing so is through a personal restraint petition, which may be filed [and heard] concurrently with the direct appeal." *McFarland*, 127 Wn.2d at 335 (citing WASH. STATE BAR ASS'N, WASHINGTON APPELLATE PRACTICE DESKBOOK § 32.2(3)(c), at 32-6 (2d ed. 1993) (citing *State v. Byrd*, 30 Wn. App. 794, 800, 638 P.2d 601 (1981))).

CONCLUSION

"Criminal profiteering" crimes include only the predicate offenses specifically listed in RCW 9A.82.010(4). Other unlisted, nonpredicate, non-CPA offenses cannot be included in the "pattern of criminal profiteering activity" described by RCW 9A.82.060. After all, that statute requires a "pattern of criminal profiteering activity," not a pattern of some criminal profiteering activity plus any other crimes that the State says are similar. Therefore, the State's decision to join Linville's unenumerated crimes with the charge of leading organized crime, RCW 9A.82.060, violated the CPA's "joinder bar," RCW 9A.82.085. Any other interpretation would make that joinder bar completely ineffective.

On this record, however, it is impossible to tell whether Linville's counsel had legitimate reasons for remaining silent in the face of such joinder. It would take a separate collateral challenge with evidence outside the record to figure that out.

We therefore reverse and remand to the Court of Appeals for further proceedings in that court.

14

McCloud, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Wiggins, J.

Madsen, J.

Owens, J.

No. 94813-5

GONZÁLEZ, J. (concurring in result only)—Washington's Criminal

Profiteering Act (WCPA), ch. 9A.82 RCW, is a powerful tool designed to

eliminate organized crime. Because it is such a powerful tool, our legislature has

placed limitations on its use. Relevantly, only crimes that fit within a pattern of

criminal profiteering may be joined. RCW 9A.82.085. The majority expands this

limitation to the point of absurdity and eviscerates this tool's ability to fight

organized crime.

Kenneth Linville Jr. led a wave of burglaries throughout Thurston County.

The State charged him with leading organized crime, RCW 9A.82.060, and 137

other crimes. Majority at 3 n.2. Some of Linville's crimes were specifically

enumerated in the definition of "criminal profiteering," RCW 9A.82.010(4); others

were not. The WCPA's joinder provision prevents the State from charging

Linville with crimes that are not "alleged to be part of the pattern of criminal

profiteering activity." RCW 9A.82.085. The State joined all charges related to

Linville's organized criminal activities, including those that were not enumerated

under the definition of "criminal profiteering" in the WCPA. Linville's counsel did not move for severance based on the WCPA's joinder provision. I agree with the majority that Linville fails to rebut the presumption that counsel performed reasonably, but write separately because the joinder provision does not *categorically bar* the State from charging crimes that are not enumerated under the definition of "criminal profiteering."

In a prosecution for leading organized crime, the State can charge only crimes "alleged to be part of the pattern of criminal profiteering activity." RCW 9A.82.085. The WCPA defines "pattern of criminal profiteering activity" as "engaging in at least three acts of criminal profiteering." RCW 9A.82.010(12). The phrase "at least," in this definition, modifies "three acts" and sets out a floor for what constitutes a pattern of criminal profiteering activity. *See Baker v. Morris*, 84 Wn.2d 804, 812-13, 529 P.2d 1091 (1974) (Stafford, J., dissenting) ("'At least' is not a restrictive phrase."). "At least" does not limit what other acts the State can charge to demonstrate the pattern; it simply prohibits the State from charging a WCPA violation unless there are a minimum of three of the enumerated criminal profiteering crimes included in RCW 9A.82.010(4).[1] Those "three acts must have

---

[1] Federal law operates similarly. In *H.J. Inc. v. Northwestern Bell Telephone Co.* the Supreme Court considered the definition of "pattern of racketeering activity," which provides that a pattern includes "'at least two acts of racketeering activity.'" 492 U.S. 229, 237-38, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (quoting 18 U.S.C. § 1961(5)). It reaffirmed and applied the principle that "at least" two predicates "implies 'that while two acts are necessary, they may not

2

the same or similar intent, results, accomplices, principals, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events." RCW 9A.82.010(12). Functionally, this acts to limit application of the joinder rule in CrR 4.3, which allows offenses to be joined when they "[a]re of the same or similar character, even if not part of a single scheme or plan," among other things.

The majority fundamentally misunderstands organized crime prosecutions. The required nexus can be proved in some cases by relying on crimes that are not enumerated.[2] Clearly, the legislature intended for crimes that are not enumerated as criminal profiteering to be charged alongside enumerated crimes. James M. Evans, *"Don't Throw Me Into the Briar Patch": RICO and Rules of Evidence*, 73 NOTRE DAME L. REV. 433, 435 (1998) ("[T]here are high evidentiary burdens involved with RICO. . . . [B]ecause the RICO prosecutor[s] *must* prove more, [they] *can* prove more."). Here, the State alleged Linville led a wave of burglaries. Burglary is not enumerated in the definition of criminal profiteering, but the bulk of Linville's burglaries were committed in the same transaction as criminal

---

be sufficient.'" *Id.* (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). Like the federal statute, the WCPA's definition section "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *Id.*

[2] This case is a poor vehicle to explore the contours of the pattern requirement's ceiling because Linville's counsel did not argue specific crimes fell outside his pattern of criminal profiteering.

profiteering crimes, such as first degree theft. As the State explains, "The definition of a pattern of criminal profiteering necessarily includes the means utilized and crimes based on the methods and results of offenses which would otherwise be enumerated are necessarily part of the 'pattern' of criminal profiteering." Pet. for Review at 11. To show that enumerated crimes have a nexus to the same criminal enterprise, the State may need to rely on crimes that are not enumerated. Thus, crimes that are not enumerated as criminal profiteering can be charged alongside enumerated crimes to satisfy the WCPA's nexus requirement.

The State raises a significant question of whether the majority's interpretation is a sustainable interpretation of the statute given that it, in effect, would trigger double jeopardy to block prosecution of crimes that are not enumerated but were nonetheless part of the nexus of the criminal profiteering activity. In my view, this is more evidence that the legislature could not have intended the interpretation of the joinder provision that the majority gives it today.

The majority's categorical rule reveals a lack of confidence in the adjudicative process—trial courts are capable of determining if alleged crimes fit within a pattern. As long as at least three criminal profiteering predicates are included in a pattern of criminal profiteering activity and all of the charged crimes are related to the pattern, the joinder provision is satisfied. I concur in result only.

4

González, J.