IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87262-1-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MARKUS R. PETERSEN, | |
| Appellant. | |

BOWMAN, A.C.J. — A jury convicted Markus R. Petersen of second degree theft for stealing a minibike from Coastal Farm and Ranch (Coastal). Petersen appeals, arguing his counsel was ineffective for failing to object to the admission of the booking photo from the day of his arrest. Finding no prejudicial error, we affirm.

FACTS

In April 2024, Patrick St. John worked as an assistant store manager at Coastal in Sequim. St. John discovered that someone had stolen a Coleman B200 minibike from the store on March 19, 2024. He reviewed surveillance footage of the store from March 19 and saw a man, later identified as Petersen, struggling to move an unassembled, boxed minibike at around 6:45 p.m. At first, Petersen tried to move the box using a wheelbarrow. When that did not work, he let the box fall out of the wheelbarrow and pushed it by hand to the side of the patio, where he left it near a gate.

An hour later, a surveillance camera at the front of the store shows a person park a truck next to Coastal's sidewalk at around 7:49 p.m. The man got out of the driver's seat and met Petersen, who was standing on the sidewalk. The pair briefly disappear from the camera's view and then return to the truck, carrying what looks like the same large minibike box. They placed the box in the truck bed, got in the cab, and drove off. St. John reported the theft to police and gave them the surveillance footage.

Sequim Police Department Detective Richard Larsen recognized Petersen as one of the men in Coastal's surveillance video and interviewed him at the precinct on May 30, 2024. Petersen told Detective Larsen that his uncle bought him the minibike online. But the phone number for his uncle "[did] not work" and Petersen had no receipt or proof of purchase. Detective Larsen then arrested Petersen for the theft. The State charged Petersen with second degree theft as a principle or an accomplice. The case went to trial on August 19, 2024.

At trial, St. John testified on behalf of the State. He explained to the jury that when Coastal sells "anything with a gas powered engine," it "has to be started and assembled by staff prior to leaving the store." So, if an online order came in for a minibike, Coastal would first build and test it, then call the customer to let them know the minibike was ready for pick up. He also explained that Coastal keeps track of customer purchases using their point of sale (POS) system. St. John told the jury that he looked in the POS system for sales of a minibike. He found that there was no sale of a minibike on March 19, 2024. And that the last minibike had been sold by Coastal on March 16 to an in-person

customer. Through St. John's testimony, the State admitted the surveillance videos from March 19 and several screenshots of the videos.

Detective Larsen also testified for the State. He said that he knew Petersen and identified him in the courtroom. The prosecutor asked Detective Larsen if he remembered what Petersen was wearing on the day he arrested him. Detective Larsen said Petersen was wearing "[j]eans and a red shirt." The prosecutor then showed Detective Larsen a booking photo of Petersen from May 30, 2024. Larsen identified the photo as "a booking photo" of Petersen taken on the day of his arrest, which "is typically done when you get into the Clallam County jail." Detective Larsen then agreed that the photo showed Petersen in a red shirt. The State moved to admit the booking photo without objection. The court granted the motion and published the photo to the jury.

Petersen testified on his own behalf. He said that his uncle gifted him the minibike for his birthday. And that his uncle mailed him a receipt, telling Petersen that he could pick up the minibike at Coastal. Petersen said he went to Coastal on March 19 with his "best friend" "Bailey" to get the minibike. When he got there, he showed his receipt to the cashier, who told him to wait. Petersen waited for about 15 minutes and then decided to get the minibike himself.

Petersen explained that the minibike box was "extremely heavy," so he at first tried to put it in a wheelbarrow. But he eventually pushed it along the ground toward the gate of the store. Petersen said that the box "was a heck of a lot bigger than [he] expected" and there were "a lot of other things" in the bed of Bailey's truck. So, he and Bailey drove to Bailey's home to empty the bed of the

3

truck. About an hour later, Petersen and Bailey returned in the truck and put the minibike in its bed.

Petersen told the jury he no longer had the proof of purchase from his uncle and was "pretty sure [he] probably threw it away." Petersen acknowledged on direct examination that he was previously convicted of theft, burglary, and making a false statement.

The jury convicted Petersen as charged. On September 3, 2024, the court sentenced Petersen to three months of confinement. Petersen appeals.

ANALYSIS

Petersen argues his counsel was ineffective for failing to object to the admission of his booking photo. We disagree.

An ineffective assistance of counsel claim presents mixed questions of law and fact that we review de novo. *State v. K.A.B.*, 14 Wn. App. 2d 677, 707, 475 P.3d 216 (2020) (citing *State v. Linville*, 191 Wn.2d 513, 518, 423 P.3d 842 (2018)). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). We apply the two-prong *Strickland* test to determine whether counsel was ineffective. *State v. Jeffries*, 105 Wn.2d 398, 417-18, 717 P.2d 722 (1986). Under *Strickland*, a defendant must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in

prejudice. 466 U.S. at 687. If the defendant fails to show either prong, their claim fails and our inquiry ends. *See id.*

To establish prejudice, a defendant must show there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). In the context of failing to object to the admission of evidence, the defendant must show that the court likely would have sustained the proposed objection and that the result of the proceeding would have been different if the court had not admitted the evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

Citing *State v. Newton*, 42 Wn. App. 718, 714 P.2d 684 (1986),[1] Petersen argues that admission of his booking photo the day Detective Larsen arrested him was prejudicial because it "undermined [his] presumption of innocence and suggested to the jury that he had criminal propensity." But that case is inapt.

In *Newton*, the State admitted a booking photo of the defendant from "a prior arrest." 42 Wn. App. at 726-27. This admission disclosed the fact that the defendant had been arrested separate from the crime for which he was on trial, supporting an inference of criminal propensity. *See id.* at 272. But in *State v. Rivers*, 129 Wn.2d 697, 712, 921 P.2d 495 (1996), our Supreme Court recognized that the same prejudice does not exist when the court admits a booking photo taken by police at the time of arrest for the crime with which the defendant is charged. This is because such a photo does not disclose a prior

---

[1] *Reversed on other grounds*, 109 Wn.2d 69, 743 P.2d 254 (1987).

arrest, and "the jury would reasonably have been aware that a booking procedure, including photographing the [d]efendant, would have existed" for the charged crime. *Id.*

Still, Petersen argues admission of the booking photo was prejudicial because it "depicted him as [a] guilty criminal." Citing *State v. Finch*, 137 Wn.2d 792, 975 P.2d 967 (1999), he likens the photo to "allowing jurors to see an accused person in handcuffs." In *Finch*, our Supreme Court recognized the "substantial danger of destruction in the minds of the jury of the presumption of innocence" where a defendant is brought to trial wearing prison garb, in handcuffs, or is otherwise shackled. *Id*. at 844. But Petersen's booking photo does not depict him wearing prison garb, secured in handcuffs, or otherwise shackled. The photo shows Petersen standing against a white brick wall and wearing a red T-shirt. Nothing about the photo suggests that Petersen is a criminal or that he committed the theft.

Finally, the evidence of Petersen's guilt at trial was substantial. Petersen admitted that he took the unassembled minibike from Coastal on March 19, 2024, and he explained how "extremely heavy" the box was and that he put it in Bailey's truck. And St. John testified that Coastal did not sell any minibikes on that day. The only minibike sale around that time was in-person on March 16. St. John also explained to the jury that if a customer ordered a minibike online, Coastal would first build and test it before calling the customer to let them know it was ready for pick up. But the surveillance videos show Petersen taking the minibike from the store unassembled and still in its box. And Petersen admitted

6

it was him in the videos.  As a result, Petersen cannot show that the outcome of his trial would have been different had the court refused to admit the booking photo from the day of his arrest.[2]

Because we find no prejudicial error, we need not address whether counsel's performance was deficient.  *Strickland*, 466 U.S. at 687.  We affirm Petersen's conviction of second degree theft.

_____, ACJ

WE CONCUR:

_____          _____

---

[2] Petersen separately argues the court committed evidentiary error by admitting the booking photo.  But we will reverse an evidentiary ruling only if it results in prejudice. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001).  Because Petersen fails to show prejudice, any error was harmless.